1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  TAELIENIU FAATILIGA,                           1:09-cv-02039-LJO-DLB (HC)

10                      Petitioner,               FINDINGS AND RECOMMENDATION
                                                  REGARDING PETITION FOR WRIT OF
11         v.                                     HABEAS CORPUS

12                                                [Doc. 1]
    JAMES D. HARTLEY,
13
                        Respondent.
14  _____/

15
16         Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17  pursuant to 28 U.S.C. § 2254.

18                              RELEVANT HISTORY[1]

19         Petitioner is currently in the custody of the California Department of Corrections and

20  Rehabilitation (CDCR) following his conviction of attempted murder and assault with a firearm.

    Petitioner is serving a sentence of seven years plus life with the possibility of parole.
21
22          In the instant petition Petitioner does not challenge his underlying conviction; rather, he

23  claims the Board of Parole Hearings' (Board) November 27, 2007 decision finding him

24  unsuitable for release violated his due process rights because it was not supported by some

    evidence and he was improperly removed from the hearing.
25
26         Petitioner filed a state habeas court petition challenging the Board's 2008 decision in the

27  _____

28         [1] This information is taken from the state court documents attached to Respondent's answer and are not
    subject to dispute.

1  San Diego County Superior Court on December 8, 2008.  The petition was denied in a reasoned

2  decision on January 20, 2009.

3         On February 18, 2009, Petitioner filed a state petition in the California Court of Appeal

4  Fourth Appellate District.  The court denied the petition in a reasoned decision on March 23,

5  2009.

6         Petitioner then filed a petition in the California Supreme Court on May 26, 2009, which

7  was summarily denied.

8         Petitioner filed the instant federal petition for writ of habeas corpus on November 20,

9  2009.  Respondent filed an answer to the petition on June 7, 2010, and Petitioner filed a traverse

10  on June 30, 2010.

11  STATEMENT OF FACTS[2]

12         On April 26, 1995, Petitioner went to the apartment of Terrence Hightower.  When Mr.

13  Hightower opened the front door, Petitioner shot him three times with a 9.mm semiautomatic

14  firearm and then fled the scene.  Hightower was severely injured but ultimately recovered.  In

15  August 1995, Hightower saw Petitioner and notified the police.  Petitioner was arrested and told

16  officers that he had done nothing wrong, and he had been in Samoa the last two months.

17  Hightower was a friend of Petitioner's girlfriend and believed Petitioner was jealous.  Petitioner

18  made threats that he would "get" Hightower.

19  DISCUSSION

20  I.    Standard of Review

21         On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act

22  of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed after its

23  enactment.  Lindh v. Murphy, 521 U.S. 320 (1997), *cert. denied,* 522 U.S. 1008 (1997); Jeffries

24  v. Wood, 114 F.3d 1484, 1499 (9th Cir. 1997), *quoting* Drinkard v. Johnson, 97 F.3d 751, 769 (5th

25  Cir.1996), *cert. denied,* 520 U.S. 1107 (1997), *overruled on other grounds by* Lindh v. Murphy,

26  521 U.S. 320 (1997) (holding AEDPA only applicable to cases filed after statute's enactment).

27

28      [2] This information is taken from the transcript of the 2007 Board hearing.

2

1   The instant petition was filed after the enactment of the AEDPA; thus, it is governed by its

2   provisions.

3        Petitioner is in custody of the California Department of Corrections and Rehabilitation

4   pursuant to a state court judgment. Even though Petitioner is not challenging the underlying state

5   court conviction, 28 U.S.C. § 2254 remains the exclusive vehicle for his habeas petition because

6   he meets the threshold requirement of being in custody pursuant to a state court judgment. Sass

7   v. California Board of Prison Terms, 461 F.3d 1123, 1126-1127 (9th Cir.2006), citing White v.

8   Lambert, 370 F.3d 1002, 1006 (9th Cir.2004) ("Section 2254 'is the exclusive vehicle for a

9   habeas petition by a state prisoner in custody pursuant to a state court judgment, even when the

10  petition is not challenging [her] underlying state court conviction.'").

11       The instant petition is reviewed under the provisions of the Antiterrorism and Effective

12  Death Penalty Act which became effective on April 24, 1996.  Lockyer v. Andrade,  538 U.S. 63,

13  70 (2003).  Under the AEDPA, an application for habeas corpus will not be granted unless the

14  adjudication of the claim "resulted in a decision that was contrary to, or involved an

15  unreasonable application of, clearly established Federal law, as determined by the Supreme Court

16  of the United States" or "resulted in a decision that was based on an unreasonable determination

17  of the facts in light of the evidence presented in the State Court proceeding." 28 U.S.C.

18  § 2254(d); see Lockyer, 538 U.S. at 70-71; Williams, 529 U.S. at 413.

19       "[A] federal court may not issue the writ simply because the court concludes in its

20  independent judgment that the relevant state court decision applied clearly established federal

21  law erroneously or incorrectly.  Rather, that application must also be unreasonable."  Id. at 411.

22  A federal habeas court making the "unreasonable application" inquiry should ask whether the

23  state court's application of clearly established federal law was "objectively unreasonable."  Id. at

24  409.     Petitioner has the burden of establishing that the decision of the state court is contrary to

25  or involved an unreasonable application of United States Supreme Court precedent. Baylor v.

26  Estelle, 94 F.3d 1321, 1325 (9th Cir. 1996).  Although only Supreme Court law is binding on the

27  states, Ninth Circuit precedent remains relevant persuasive authority in determining whether a

28  state court decision is objectively unreasonable.  See Clark v. Murphy, 331 F.3d 1062, 1069 (9th

3

1  Cir.2003); Duhaime v. Ducharme, 200 F.3d 597, 600-01 (9th Cir.1999).

2  II.    Review of Petition

3         There is no independent right to parole under the United States Constitution; rather, the

4  right exists and is created by the substantive state law which defines the parole scheme.

5  Hayward v. Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v.

6  Allen, 482 U.S. 369, 371 (1987); Pearson v. Muntz, No. 08-55728, 2010 WL 2108964, * 2 (9th

7  Cir. May 24, 2010) (citing Wilkinson v. Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d

8  174 (2005)); Cooke v. Solis, No. 06-15444, 2010 WL 2330283, *6 (9th Cir. June 4, 2010).

9  "[D]espite the necessarily subjective and predictive nature of the parole-release decision, state

10  statutes may create liberty interests in parole release that are entitled to protection under the Due

11  Process Clause." Bd. of Pardons v. Allen, 482 U.S. at 371.

12         In California, the Board of Parole Hearings' determination of whether an inmate is

13  suitable for parole is controlled by the following regulations:

14

15         (a) General. The panel shall first determine whether the life prisoner is suitable for
       release on parole. Regardless of the length of time served, a life prisoner shall be found
16       unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an
       unreasonable risk of danger to society if released from prison.

17         (b) Information Considered. All relevant, reliable information available to the
18       panel shall be considered in determining suitability for parole. Such information shall
       include the circumstances of the prisoner's social history; past and present mental state;
19       past criminal history, including involvement in other criminal misconduct which is
       reliably documented; the base and other commitment offenses, including behavior before,
20       during and after the crime; past and present attitude toward the crime; any conditions of
       treatment or control, including the use of special conditions under which the prisoner may
21       safely be released to the community; and any other information which bears on the
       prisoner's suitability for release. Circumstances which taken alone may not firmly
22       establish unsuitability for parole may contribute to a pattern which results in a finding of
       unsuitability.

23

24  Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

25  demonstrate unsuitability for release. "Circumstances tending to indicate unsuitability include:

26         (1) Commitment Offense.  The prisoner committed the offense in an especially heinous,
       atrocious or cruel manner.  The factors to be considered include:

27
28         (A) Multiple victims were attacked, injured or killed in the same or separate
       incidents.

4

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.
(C) The victim was abused, defiled or mutilated during or after the offense.
(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.
(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function within the law upon release.

Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

The California parole scheme entitles the prisoner to a parole hearing and various procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be supported by "some evidence," but review of the Board's or Governor's decision is extremely deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

Because California's statutory parole scheme guarantees that prisoners will not be denied parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals recently held California law creates a liberty interest in parole that may be enforced under the Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d 606, 608-609 (9th Cir. 2010).  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state court's application of the some evidence rule was unreasonable or was based on an unreasonable determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563; Pearson v. Muntz, 606 F.3d at 608.

The applicable California standard "is whether some evidence supports the *decision* of the Board or the Governor that the inmate constitutes a current threat to public safety, and not merely whether some evidence confirms the existence of certain factual findings."  In re Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the circumstances of the commitment offense, the Lawrence Court concluded that

> although the Board and the Governor may rely upon the aggravated circumstances of the commitment offense as a basis for a decision denying parole, the aggravated nature of the crime does not in and of itself provide some evidence of current dangerousness to the public unless the record also establishes that something in the prisoner's pre- or post-incarceration history, or his or her current demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

6

1    Id. at 1214.

2       In addition, "the circumstances of the commitment offense (or any of the other factors

3    related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

4    the determination that a prison remains a danger to the public.  It is not the existence or

5    nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

6    significant circumstance is how those factors interrelate to support a conclusion of current

7    dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

8       "In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

9    central issue of *current* dangerousness when considered in light of the full record before the

10   Board or the Governor.'"  Cooke v. Solis, 606 F.3d 1206, 1214 (9th Cir. 2010) (emphasis in

11   original) (citing Hayward v. Marshall, 603 F.3d at 560).

12       A.    Last Reasoned State Court Decision

13       In the last reasoned decision of the California Court of Appeal, the Court held, in

14   pertinent part, as follows:

15           [Petitioner] contends the Board denied him due process by refusing to
         allow him to participate, speak on his own behalf and ask and answer questions
16       throughout his parole consideration hearing.  The transcript of the hearing reflects
         [Petitioner] appeared at the hearing and soon became argumentative and
17       disruptive.  The Board members advised [Petitioner] how to comport himself and
         that he would be removed if he did not comply.  After nearly an hour of
18       [Petitioner's] interruption, the Board had him removed from the hearing room and
         conducted the hearing in his absence. [Petitioner] was afforded procedural due
19       process but his misconduct interfered with the hearing and he was properly
         removed.
20
21           Petitioner claims that the Board's decision is not supported by some
         evidence. . . .
22
             The record shows [Petitioner] had a history of assaultive behavior and
23       belonged to a gang during his teens. He had three serious disciplinary findings in
         prison, including disrespect to staff in 1997, possession of contraband in 1998 and
24       possession of inmate-manufactured alcohol in 2003.  He also had five minor
         disciplinary findings, the last in 2002.  The evaluating psychologist reported
25       [Petitioner] has an antisocial personality disorder and is in the moderate range for
         future violence.  The Board commended [Petitioner] for completing electrical and
26       dry cleaning vocations and for positive programming and self-help activities.  The
         Board made an individualized inquiry into [Petitioner's] suitability for parole and
27       its decision is supported by some evidence.

     (Exhibit 4, to Answer.)
28

1

B.      2007 Board Hearing

2        At Petitioner's *initial* parole consideration hearing on November 27, 2007, the Board

3  found him unsuitable based on the circumstances of the commitment offense, prior criminal

4  history, institutional misconduct, and unfavorable psychological evaluation.

5        The commitment offense involved Petitioner intentionally arming himself with a

6  semiautomatic weapon and approaching the victim at his residence awaking him from his sleep.

7  Petitioner shot the victim several times at close range, resulting in five bullet wounds to the

8  victim.  "Two of these bullets entered and exited through his right shoulder, causing four wounds

9  and the third bullet struck him in the face and traveled to his chest, entered his right lung,

10 continued to his stomach, his liver, and finally lodged in on the right side of his groin, and this

11 bullet was not retrieved during surgery."  The motive for the shooting was apparently jealously

12 because the victim was dating Petitioner's former girlfriend, which the Board found to be very

13 trivial.  Cal. Code Regs. tit. 15, § 2402(c)(1).

14       The commitment offense occurred when Petitioner was twenty years old, and he had

15 previously suffered a juvenile conviction for assault with a deadly weapon.  Cal. Code Regs. tit.

16 15, § 2402(c)(2).  He has a history of tumultuous relationships with others, as evidenced by his

17 active participation in the West Side Piru's Gang for a few years.  Cal. Code Regs. tit. 15, §

18 2402(c)(3).

19       Petitioner suffered three serious rules violation including, disrespecting staff in 1997,

20 possession of contraband in 1998, and possession of pruno in 2003.  Cal. Code. Regs. tit. 15, §

21 2402(c)(6).  It was noted that Petitioner continued to display disrespect for officials which was

22 the cause of his removal from the 2007 Board hearing.  He also suffered five minor disciplinary

23 violations, including delaying lockup, refusing to participate, failure to report, delaying lockup,

24 and failure to maintain his "quarters."

25       The most recent psychological report assessed Petitioner to be suffering from antisocial

26 personality disorder and concluded he posed a moderate likelihood to become involved in violent

27 activity if released, based at least in part on abstinence of substance abuse.  Cal. Code Regs. tit.

28 15, § 2402(b).

1   After the considering the factors in favor of suitability, the Board concluded that the

2   positive aspects of Petitioner's behavior did not outweigh the factors of unsuitability.  Given the

3   circumstances of Petitioner's commitment offense, prior criminal history, institutional

4   misconduct, and unfavorable psychological report, the state courts' determination that there is

5   some evidence to support the Board's 2007 decision is not an unreasonable application of federal

6   law, nor an unreasonable determination of the facts in light of the record.   Accordingly, federal

7   habeas corpus relief is foreclosed.

8   Petitioner claims his due process rights were violated because he was removed from the

9   hearing.  Petitioner's due process right to be present at the parole hearing was not violated in this

10  instance because he was allowed to appear and it was his own wrongdoing that caused his

11  removal.  The transcript of the hearing consists of ninety-five pages, and the first 54 pages are

12  full of objections and interruptions by Petitioner.  Petitioner was extremely uncooperative and

13  attempted to discharge his appointed attorney.  He repeatedly made objections even though he

14  was advised the objections were not cognizable.  Petitioner was repeatedly informed that if he

15  continued to disrupt the proceeding the remainder of the hearing would be conducted in his

16  absence.  Despite the strong warning, Petitioner continued to disrupt claiming that the law would

17  not be followed and he did not understand what the commissioners were telling him.  He was

18  eventually removed from the hearing and it was conducted in his absence.

19  Although section 2402 of the Title 15 California Code of Regulations does not

20  specifically allow for the removal of an inmate from the parole consideration hearing, by analogy

21  removal of a disruptive defendant is authorized under California law in a felony criminal trial.

22  California Penal Code section 1043 subsection (b)(1) states:

23      The absence of the defendant in a felony case after the trial has commenced in his
        presence shall not prevent continuing the trial to, and including, the return of the
24      verdict in any of the following cases: (1) Any case in which the defendant, after he
        has been warned by the judge that he will be removed if he continues his
25      disruptive behavior, nevertheless insists on conducting himself in a manner so
        disorderly, disruptive, and disrespectful of the court that the trial cannot be carried
26      on with him in the courtroom.

27

28  Even though Section 1043(b)(1) applies to criminal trials, not parole determination hearing, it is

1  clear that a parole release determination is not subject to all of the due process protections of an

2  adversarial proceeding, and it logically follows that due process would not require greater

3  protection in a parole consideration hearing than required at a felony criminal trial.  Therefore,

4  there is no basis to Petitioner's claim that his due process rights were violated by his removal

5  from the parole hearing because of his disruptive behavior.  Even after Petitioner's removal, his

6  appointed attorney continued to represent him and present evidence to the Board, and the record

7  is clear all the evidence was duly considered by the Board.

8                                      RECOMMENDATION

9        Based on the foregoing, it is HEREBY RECOMMENDED that:

10       1.      The instant petition for writ of habeas corpus be DENIED; and

11       2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

12       This Findings and Recommendation is submitted to the assigned United States District

13  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

14  Local Rules of Practice for the United States District Court, Eastern District of California.

15  Within thirty (30) days after being served with a copy, any party may file written objections with

16  the court and serve a copy on all parties.  Such a document should be captioned "Objections to

17  Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

18  and filed within fourteen (14) days after service of the objections.  The Court will then review the

19  Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

20  failure to file objections within the specified time may waive the right to appeal the District

21  Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

22

23       IT IS SO ORDERED.

24   **Dated:**   **July 14, 2010**         _____/s/ **Dennis L. Beck**_____
                                            UNITED STATES MAGISTRATE JUDGE

25

26

27

28